UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
|---|---|---|---|
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: | |
| Sergei Shevchenko | Victor Mercado-Santana, DOJ | |

**Proceedings:**   MOTION FOR SUMMARY JUDGMENT (dkt. 21, filed February 28, 2014)

## I. INTRODUCTION

Ukrainian citizen Natalia Yaroshenko seeks a work visa in the United States in connection with her employment at Homero Hardwood Floors ("Homero"), a corporation located in Los Angeles, California. On July 7, 2007, Ms. Yaroshenko filed a "Form I-140, Immigrant Petition for Alien Worker" with the United States Citizenship and Immigration Services ("USCIS"). On February 26, 2009, that initial petition was denied. After further proceedings before USCIS, Ms. Yaroshenko, along with Homero and her husband Andriy Shevlyakov, filed this action on July 26, 2013 against defendants Janet Napolitano, Gerard Heinauer, and Mark Hazuda challenging the USCIS's determination.[1]

On February 28, 2014, defendants moved for summary judgment. Dkt. 21. On April 21, 2014, plaintiffs filed their opposition, dkt. 23, and on April 28, 2014, defendants replied, dkt. 25. On May 12, 2014, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Because plaintiffs seek administrative review of an agency decision, the Court takes the facts from the Certified Administrative Record ("CAR"). See Camp v. Pitts,

---

[1] On January 28, 2014, Secretary of Homeland Security Jeh Johnson replaced Acting Secretary of Homeland Security Rand Beers, who had previously replaced Janet Napolitano as a defendant in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); Pit River Tribe v. U.S. Forest Serv., 469 F.3d 768, 778 (9th Cir. 2006) ("Because this is a record review case, we may direct that summary judgment be granted to either party based upon our de novo review of the administrative record." (quotation omitted)).

     Homero is a California-based S Corporation located in Los Angeles, California. CAR 168-170. Homero, which was established in 1998, designs and installs hardwood flooring. CAR 170. As part of this business, Homero seeks to employ plaintiff Natalia Yaroshenko, a Ukrainian national, as a "craft artist."[2] Id. at 170, 560.

     In December 2006, Homero applied for, and received, a labor certification for Yaroshenko from the United States Department of Labor. Id. at 177-87. Homero subsequently filed its first Form I-140, Immigrant Petition for Alien Worker ("I-140"), with USCIS on July 9, 2007. Id. at 682-713. Homero sought an immigrant visa on behalf of Yaroshenko, contending that she was a "skilled worker." Homero's attorney averred that very few people are familiar with the design of hardwood flooring installed by Homero, and that Yaroshenko was, unlike most graphic designers, well-qualified for the position. Id. at 685.

     Homero's first I-140 petition stated that it planned to pay Yaroshenko a salary of $1,043.20 per week, or $54,246 per year. Id. at 683. In support of its petition, Homero submitted copies of its 2006 and 2007 tax returns. Homero's 2006 tax return reflected a net income of $155,598. Id. at 708. Homero's 2007 tax return showed a net loss of -$69,600, and net current assets of -$21,149. Id. at 650, 653. Homero also submitted Yaroshenko's 2007 W-2 form, which stated that Homero paid Yaroshenko $7,302 in 2007. Id. at 657. On February 26, 2009, USCIS denied Homero's first I-140 petition, based on its conclusion that Homero could not have paid Yaroshenko's proposed salary

---

     [2] The record alternates between spelling Ms. Yaroshenko's name as "Natalia" and Nataliya." Because the case was filed under the caption "Natalia," see dkt. 1., the Court adopts that spelling here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

during 2007. Id. at 628. On March 30, 2009, Homero appealed this decision administratively within USCIS. This appeal was denied on April 17, 2009. Id. at 621-22.

On August 26, 2009, Homero filed its second I-140 petition. Id. at 559-92. This second petition included Homero's 2008 tax returns and Yaroshenko's 2008 W-2. These records showed a net income for Homero of $133,079, and net assets of $19,540. Id. at 581-84. Yaroshenko's 2008 W-2 states that Homero paid Yaroshenko $50,073 in 2008. Id. at 510. Homero also submitted a letter from an accounting firm purporting to analyze Homero's tax returns, and concluding that Homero was capable of paying Yaroshenko's proposed salary. Id. at 551-53. On January 29, 2010, USCIS again denied Homero's second I-140 petition, finding that Homero had still not shown the ability to pay the proposed wages during 2007. Id. at 544-56.

On March 9, 2010, Homero appealed this decision to the USCIS Administrative Appeals Office. Id. at 533-35. In support of this appeal, Homero supplied a sworn statement from Homero Ramos, Homero's sole shareholder, explaining that he would have forfeited some of the $65,7111 in dividends he received during 2007 in order to pay Yaroshenko's wage. Id. at 483. On August 9, 2010, the Administrative Appeals Office dismissed Homero's appeal as untimely, but remanded the case to USCIS to be considered as a motion to reopen. Id. at 420. On October 17, 2012, Homero submitted three additional pieces of evidence to USCIS in support of this motion to reopen. First, Homero filed a report discussing the 2007-2008 financial crisis. Id. at 40-18. Second, Homero submitted an additional sworn statement from Homero Ramos, declaring that, due to the financial crisis, costs went up due to increased supply costs, and revenue went down as many customers were unable to pay for already-performed work. CAR 384-386. Third, Homero provided statements from real estate professionals and interior designers vouching for the quality of Homero's work. Id. at 387-90.

While this motion to reopen was still pending, Homero filed a third I-140 petition on February 7, 2012. Id. at 168-277. In support of this third petition, Homero submitted its 2009 tax return and Yaroshenko's 2009 W-2. Homero's 2009 tax return showed a net income of $30,808 and net assets of -$58,170. Id. at 257-60. Yaroshenko's W-2 stated that Homero paid Yaroshenko $13,562 in 2009. Id. at 262. USCIS once again denied Homero's third I-140 on August 2, 2012, explaining that Homero failed to demonstrate its ability to pay Yaroshenko in 2007 and 2009. Id. at 160-63. Homero sought

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

reconsideration of this denial on February 12, 2013, submitting much the same additional evidence as Homero submitted in support of the motion to reopen USCIS's denial of the second I-140 petition. Id. at 49-140.

On August 19, 2013, USCIS issued two decisions denying (1) Homero's motion to reopen the denial of its second I-140 petition and (2) Homero's motion to reconsider the denial its third I-140 petition. Id. at 1-4, 278-81. The two decisions relied on similar reasoning to conclude that Homero could not pay Yaroshenko's proposed wage during 2007 and 2009. To begin, USCIS determined that Homero's net income and net current assets during 2007 and 2009 could not have covered Yaroshenko's proposed salary of $54,246 per year. In 2007, Homero reported a net loss of $69,600 and net current assets of -$21,149, while only paying Yaroshenko $7,302. Id. at 2, 279. In 2009, Homero reported a net income of $30,808, and net assets of -$58,170, while only paying Yaroshenko $13,562. Id. Moreover, USCIS declined to credit Homero Ramos' representation that he would have forfeited part of his dividend to cover Yaroshenko's wages. USCIS observed that in 2007, Ramos would have had to give up nearly two-thirds of his dividends in order to pay Yaroshenko her full salary. Id. at 279. Because this would have left Ramos with about $22,411 to support himself and his family, USCIS found his proposal unreasonable. Id.

Finally, USCIS concluded that Homero had not demonstrated that, under the totality of the circumstances, it could pay Yaroshenko's wages despite its past unprofitability. First, Homero's losses in 2007 and 2009 meant that Homero could not show a trend of consistent profitability and growth. Id. at 3, 280. Second, Homero's losses were not unique to its business, but instead reflected a broad, economy-wide downturn during the financial crisis. Id. Third, although Homero provided favorable customer and peer reviews, it had not established that it had an especially outstanding reputation in the hardwood flooring trade. Id.

USCIS accordingly denied both Homero's motion to reopen the denial of its second I-140 petition and Homero's motion to reconsider the denial its third I-140 petition. Petitioner subsequently filed this action challenging both denials as arbitrary and capricious under the APA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

**B. APA Review**

Under the Administrative Procedures Act ("APA"), a court must set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review under the APA is deferential and a court must not "substitute its judgment for that of the agency." Motor Vehicle Mfr. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43(1983). Judicial review is limited to the administrative record that was before the agency at the time of its decision. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 419–20 (1971). Based on the record before it, an agency is required to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfr. Ass'n, 463 U.S. at 43 (internal quotation omitted). Moreover, a court must give an agency's interpretation of its own regulations "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (internal quotation omitted).

**IV. DISCUSSION**

USCIS denied plaintiffs' petitions solely on the grounds that Homero had not shown that it could pay Yaroshenko's salary. 8 C.F.R. § 204.5(g)(2)—the regulation at issue in this case—sets forth the following requirement:

> Any petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence. Evidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements. In a case where the prospective United States employer employs 100 or more workers, the director may accept a statement from a financial officer of the organization which establishes the prospective employer's ability to pay the proffered wage. In appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
|---|---|---|---|
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

Because Homero initially applied for a labor certification in 2006, the priority date of the petition is 2006. Homero thus bears the burden of showing its "ability to pay" Yaroshenko's wage at all years from 2006 onward. See Taiyang Foods Inc. v. U.S. Citizenship & Immigration Servs., 2010 WL 3732193 (W.D. Wash. Sept. 20, 2010) ("An employer must demonstrate the ability to pay the proffered wage beginning at the time the [labor certification] was approved and continuing until the petition to hire an alien is approved.").

Here, USCIS found that Homero lacked "the ability to pay the proffered wage" of $54,246 per year. Specifically, USCIS found that Homero did not have sufficient net income or assets to pay Yaroshenko in the years 2007 and 2009. Defendants' reply brief sets forth the data and calculations which formed the basis for this conclusion:

| Year | Salary paid to Yaroshenko | Salary due (Offered wage minus salary paid to Yaroshenko) | Net Income | Difference (net income minus salary due) |
|---|---|---|---|---|
| 2007 | $7,302 | $46,944 | -$69,600 | -$116,544 |
| 2009 | $13,562 | $40,584 | $30,808 | -$9,776 |

| Year | Salary paid to Yaroshenko | Salary due (Offered wage minus salary paid to Yaroshenko) | Net Current Assets | Difference (net current assets minus salary due) |
|---|---|---|---|---|
| 2006 | $7,302 | $46,944 | -$21,149 | -$68,093 |
| 2006 | $13,562 | $40,584 | -$58,170 | -$98,754 |

Reply 6 (citing CAR 257-59, 260, 262, 651-52, 653, 657). Because Homero lacked both sufficient net income and assets on reserve to pay Yaroshenko's proffered wage in either 2007 or 2009, defendants contend that Homero's petition was properly denied pursuant to 8 C.F.R. § 204.5(g)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

Plaintiffs rest their opposition entirely on the Board of Immigration Appeals precedent Matter of Sonegawa, 12 I. & N. Dec. 612 (BIA Reg. Comm. 1967). In Sonegawa, the Regional Commissioner carved out an exception to § 204.5(g)(2) for situations where, even though the prospective employer had experienced a single unprofitable year, the totality of circumstances showed the prospective employer would have the "ability to pay" the proffered wage going forward. See, e.g., Just Bagels Mfg., Inc. v. Mayorkas, 900 F. Supp. 2d 363, 375 (S.D.N.Y. 2012) (citing Sonegawa for the proposition that "in 'marginal or borderline' cases, it may be appropriate to relax this standard and instead consider the 'overall magnitude of the entity's business activities' in considering an employer's ability to pay" (quoting Matter of X, 2009 WL 1449670 (Feb. 5, 2009))).

The petitioner in Sonegawa, a " fashionable 'custom dress and boutique' shop in Pasadena, California," sought to employ a Japense citizen as an "assistant designer for oriental arts." 12 I. & N. Dec. at 612. The petitioner offered a salary of $3.00 per hour, equivalent to a yearly wage of $6,240. Id. at 612, 614. However, petitioner's 1966 tax return reflected a net business profit of only $280. Id. at 614. As this profit would not cover the proposed yearly wage, the District Commissioner denied the petition because the petitioner had not shown that it had the "ability to pay" the proffered wage.

The Regional Commissioner reversed, finding that the totality of the circumstances demonstrated that the petitioner had the ability to pay the $6,240 salary. In reaching this conclusion, the Commissioner focused on the following facts. First, the petitioner had been in business in a competitive field for more than eleven years. Id. at 612. Second, with the exception of 1966, the petitioner had no history of financial difficulties. Id. Third, although the petitioner conceded that "1966 was not a good year," these difficulties were caused by one-time expenses that were unlikely to recur. Specifically, in 1966, the "petitioner changed to a better location, and for five months paid double rent; on her old place and on her new place. There were large moving costs and also a period of time when she was unable to do regular business." Id. Fourth, the petitioner submitted financial statements stating that the boutique was generating a substantial profit in 1967. Id. Lastly, the petitioner submitted substantial evidence testifying to her outstanding reputation in the fashion industry. Id. at 615.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

Based on all this evidence, the Commissioner concluded that :

> The fact that petitioner was able to show only a net profit of $280 for the calendar year of 1966 does not in itself preclude the beneficiary from establishing that she will be able to meet the conditions of the certification in the "Job Offer". After careful consideration of all the above circumstances, we find that the petitioner's expectations of continued increase in business and increasing profits are reasonable expectations and that it has been established that she has the ability to pay the beneficiary the stipulated wages and meet the conditions of the certification.

Id.

Plaintiffs here argue that they are in the same position as the petitioner in Sonegawa. Although Homero suffered a loss in 2007, and insufficient profits in 2009, plaintiffs contend that these setbacks were attributable to the recent financial crisis. Plaintiffs similarly contend that the peer and customer testimonials submitted to USCIS show that Homero, like the petitioner in Sonegawa, enjoys a strong reputation in the construction industry. Moreover, petitioner represents that, like the petitioner in Sonegawa, Homero expects to experience strong growth. Finally, plaintiffs stress the Administrative Appeals Office decision in Matter of [REDACTED], 2010 WL 4089701 (AAO April 9, 2010), where USCIS applied the Sonegawa exception despite the fact that the petitioner in that case would have been unable to pay the proffered wage for three successive years.

Defendants respond by arguing that several facts distinguish this case from Sonegawa. First, Homero's unprofitable years in 2007 and 2009 were caused by the broad downturn in the economy associated with the financial crisis, rather than the specific, one-time costs of moving offices that led to the unprofitable year in Sonegawa. Second, while the petitioner in Sonegawa experienced only a single bad year before returning to profitability, Homero was in the red in 2007, in the black in 2008, and borderline in 2009. This alternating pattern of good years and bad years undercuts Homero's projections of consistent growth and profitability. Third, the testimonials submitted by Homero, although positive, were less exceptional than the glowing reviews testifying to the Sonegawa petitioner's extraordinary reputation in the fashion industry.

**CIVIL MINUTES - GENERAL**                                    JS-6

| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
|---|---|---|---|
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

Finally, defendants distinguish Matter of [REDACTED], 2010 WL 4089701 (AAO April 9, 2010), because the petitioner there generated revenues of roughly $10 million per year. The Administrative Appeals Office in that case focused on the size of the petitioner's business in concluding that "the overall magnitude of the entity's business activities" demonstrated its ability to pay the proffered wage. Here, by contrast, Homero yielded annual revenues of slightly under $1 million per year. For all of these reasons, defendants contend that Sonegawa's "totality of the circumstances" test should not be applied here. Because Homero bore the burden of showing that the totality of the circumstances reflected its ability to pay Yaroshenko, the defendants contend that USCIS did not abuse its discretion when it denied Homero's petition.

After carefully considering the parties' arguments, the Court concludes that it is unable to determine at this juncture whether USCIS acted arbitrarily or capriciously. Homero has consistently advanced the same argument both in front of USCIS and in this Court. In short, Homero contends that the recent financial crisis, and associated slowdown in construction activity, inflicted a one-time blow to its balance sheet. Homero's poor performance in 2007 and 2009 is therefore not a good benchmark by which to measure Homero's ability to pay Yaroshenko going forward. Accordingly, Homero argues, USCIS should have applied Sonegawa's totality of the circumstances analysis and found that Homero had the ability to pay the proffered wage, notwithstanding Homero's bad years in 2007 and 2009.

Without reaching any conclusion on the ultimate merits of Homero's argument, these contentions appear to be at least somewhat plausible. Sonegawa "stands for the proposition that a petition need not necessarily be denied because one isolated year's tax return, or possibly even the returns of a few isolated years, does not or do not demonstrate that the petitioner was able to pay the proffered wage." Matter of [REDACTED], 2008 WL 3990409, at *8 (March 10, 2008). "Under the reasoning of Sonegawa, an employer who has experienced and recovered from an isolated period of economic duress can rely on its renewed profitability in demonstrating its ability to pay a proffered wage." Taco Especial v. Napolitano, 696 F. Supp. 2d 873, 879 (E.D. Mich. 2010); see also Matter of [REDACTED], 2013 WL 4775294, at *1 (March 29, 2013) (explaining that Sonegawa applies when petitioner was victim of "unique business occurrences which adversely affected its regular business performance"). Applying this reasoning here, if Homero correctly attributes its performance in 2007 and 2009 to a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
|---|---|---|---|
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

temporary slowdown in the construction business and broader economy, then Homero may have a colorable argument that it "experienced and recovered from an isolated period of economic duress."

> USCIS rejected this argument as follows:
>
> The petitioner has also submitted evidence that the wood flooring industry suffered along with the rest of the housing construction industry during the financial crisis which began in 2007, although it would appear that businesses, like the petitioner, that focused on remodeling experienced a smaller downturn in business. In the article State of the Wood Flooring Industry 2008: Riding Out the Storm, the author notes that in some areas "the remodeling news appears to be brighter." Unlike the petitioner in Sonegawa, the petitioner in this case has not provided evidence of uncharacteristic losses specific to his business.

CAR 3; see also id. at 280 (same). But this reasoning is a non-sequitur. The key fact in Sonegawa was not that petitioner's moving expenses were "specific to [the petitioner's] business," but instead that the expenses represented a one-time charge that were unlikely to recur. Although USCIS is correct that the moving expenses in Sonegawa were specific to the petitioner's business, this was neither necessary nor sufficient for the Regional Commissioner's conclusion that the petitioner had the ability to pay the proffered wage. Indeed, many expenses specific to a petitioner's business could nonetheless be likely to recur and thereby prevent the petitioner from paying the proffered wages going forward. Conversely, one can imagine many "industry-wide" expenses—a temporary drought, for example—that would be unlikely to recur and thus would not undermine a petitioner's ability to pay. In either event, it is not at all clear that it matters whether the "unique business occurrences" affected the industry as a whole or just the petitioner's business. Thus, if Homero is correct that the economic downturn was a temporary hiccup, the Court is unable to discern why it should matter that other hardwood flooring businesses hiccuped as well.

USCIS therefore appears not to have grappled with the substance of Homero's argument that the financial crisis caused an "isolated period of economic duress." USCIS's unpersuasive reasoning may undermine USCIS's other conclusions as well. For instance, USCIS concluded that the "most important[]" factor distinguishing this case this

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

case from Sonegawa was that Homero's financials "show[ed] a pattern of alternating profitable and unprofitable years, unlike the consistent profitability shown in the Sonegawa case." CAR 3, 280. But because Homero's performance in the years 2007, 2008, and 2009 occurred entirely under the shadow of the economic downturn, see CAR 128-133, this "pattern of alternating profitable and unprofitable years" is entirely consistent with Homero's theory that its 2007 and 2009 tax returns did not adequately reflect its ability to pay Yaroshenko's salary going forward. The Court therefore finds USCIS's efforts to distinguish Sonegawa less than persuasive.

This is not to say that USCIS necessarily acted arbitrarily and capriciously by denying Homero's petition. USCIS may well have a reasoned justification for rejecting Homero's argument that the financial crisis was a temporary "rough patch." That reasoned justification, however, does not appear in the record as presently constituted. And it is not this Court's office to speculate about what that justification might or could be. Instead, "[i]f the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits." Asarco, Inc. v. U.S. Envt'l. Prot. Agency, 616 F.2d 1153, 1160 (9th Cir. 1980). Accordingly, it appears that the proper course of action at this juncture is to remand this case to USCIS for further consideration of Homero's "economic downturn" argument. See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); Humane Soc'y v. Locke, 626 F.3d 1040, 1053 (9th Cir. 2010) (holding that when the agency's "explanation is incomplete and inadequate to permit meaningful judicial review," the proper remedy is a remand "to afford the agency the opportunity to . . . articulate a reasoned explanation for its action").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-04650-CAS(SHx) | Date | May 12, 2014 |
| Title | HOMERO HARDWOOD FLOORS INC. ET AL. V. RAND BEERS ET AL. | | |

## V.   CONCLUSION

In accordance with the foregoing, defendants' motion for summary judgment is hereby DENIED without prejudice.  This matter is hereby REMANDED to USCIS for further proceedings consistent with this order.

IT IS SO ORDERED.

|  | 00 | : | 08 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |